UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLAYTON WILSON,<br>    *Plaintiff*,<br><br>v.<br><br>CONNECTICUT DEPT. OF PUB.<br>HEALTH, Vital Records,<br>    Defendant. | 3:25-CV-168 (OAW) |

## ORDER GRANTING MOTION TO DISMISS

**THIS ACTION** is before the court upon the Motion to Dismiss filed by the Connecticut Department of Health ("Department"), and the memorandum of law in support thereof (together, "Motion"). *See* ECF Nos. 26 and 26-1. The court has reviewed the Motion, Plaintiff's opposition to the Motion, *see* ECF No. 29, Defendant's reply in support of the Motion, *see* ECF No. 30, Plaintiff's sur-reply, *see* ECF No. 33, and the record in this matter and is thoroughly apprised in the premises. For the reasons discussed herein, the court hereby **GRANTS** the Motion.

### I. BACKGROUND

The allegations in the complaint are difficult to follow, but this action arises from some purported failing in the state's process for establishing paternity. It appears that in 2022, Plaintiff sought information from the Department on the subject, though it is not clear whether his goal was to claim or to disclaim paternity. The Department apparently instructed him as to the means of voluntarily claiming paternity, which he followed, causing his name to appear on the birth certificate of the child at issue, imbuing him with all the responsibilities and obligations associated therewith.

1

Among these obligations, of course, is payment of child support.  And while such matters generally are for individual states to manage how they choose, the Social Security Act contains certain mandates relating to payment of child support, and the federal government has issued regulations implementing those provisions.  Relevant here, those regulations include certain procedural safeguards for any individual who intends to voluntarily acknowledge paternity.

Plaintiff asserts that the Department did not provide all the safeguards required under those regulations such that his paternity never was established legally.  Consequently, he argues, he has been incarcerated, his income has been garnished, and his driver's license has been suspended without due process.[1]  He further argues that the Department continues to deny these safeguards to other individuals voluntarily seeking to acknowledge paternity.  He seeks equitable and monetary relief.

## II.  **LEGAL STANDARD**

It is axiomatic that federal courts have limited jurisdiction and must dismiss actions where subject matter jurisdiction is lacking.  See *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d. Cir. 2011).  A party seeking to bring a case in federal court has the burden of showing that there is federal subject matter jurisdiction.  *Cloister E., Inc. v. New York State Liquor Auth.*, 563 F. Supp. 3d 90, 102 (S.D.N.Y. 2021) (quoting *Shenandoah v. Halbritter*, 366 F.3d 89, 91 (2d Cir. 2004)).

Furthermore, an action must be dismissed where the facts alleged in the complaint are insufficient to state a plausible claim for relief.  See *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] The court infers that these were sanctions levied against him for failure to pay child support.

678 (2009).  To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and not merely conceivable.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court shall accept as true all factual allegations in the complaint and draw all reasonable inferences in a plaintiff's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Ashcroft*, 556 U.S. at 684 (concluding that the *Twombly* pleading standard applies in "all civil actions").

### III.  DISCUSSION

Title IV-D of the Social Security Act lays out certain processes and requirements for states to help in locating parents of children for the purpose of facilitating the collection of child support.  Relevant here are certain provisions governing voluntary admissions of paternity, pursuant to which "the State must provide that, before a mother and a putative father can sign an acknowledgment of paternity, the mother and the putative father must be given notice, orally, or through the use of video or audio equipment, and in writing, of the alternatives to, the legal consequences of, and the rights . . . and responsibilities that arise from, signing the acknowledgment."  42 U.S.C.A. § 666(a)(5)(C)(i).  These safeguards also are reflected in federal regulations, which add the requirement that agencies implementing voluntary paternity programs (state records offices included) also must provide putative fathers with "[t]he opportunity to speak with staff, either by

3

telephone or in person, who are trained to clarify information and answer questions about paternity establishment . . . ."  45 C.F.R. § 303.5(g)(2)(i).  Connecticut law also reflects all these requirements save the latter.  Conn. Gen. Stat. § 46b-477(b).  Importantly, the state statute explicitly provides that an acknowledgement of paternity will not be binding unless all procedural safeguards are observed.  *Id.*

Plaintiff alleges that he did not receive all these safeguards.  Specifically, he did not receive oral notice of the rights and responsibilities that arise from acknowledging paternity.  It also is not clear if he had an opportunity to speak with staff specifically trained to answer questions about establishing paternity.[2]  Defendant argues that this entire action must be dismissed because (1) the claims are barred by Eleventh Amendment sovereign immunity, (2) the claims are barred by the domestic relations abstention doctrine, and (3) Plaintiff has failed to state a claim upon which relief may be granted.

These arguments assume that this is a civil rights action proceeding under 48 U.S.C. § 1983, and the court agrees that the claim Plaintiff appears to assert is a Fourteenth Amendment due process violation (which is actionable by private citizens through § 1983), though Plaintiff does not cite that statute.  In his response to the Motion, he does cite a slew of federal statutes, but none gives rise to a possible cause of action on the facts alleged.  The Federal Tort Claims Act and the Administrative Procedures Act provide for actions against *federal* entities, not state agencies, so those are inapposite.  *Simmons v. Himmelreich*, 578 U.S. 621, 623 (2016) ("The Federal Tort Claims Act (FTCA) allows plaintiffs to seek damages from the United States for certain torts committed by

---

[2] Accepting Plaintiff's allegations as true, he twice called the Department and received incomplete information about the establishment of paternity, so the court will infer for the purpose of this ruling that he did not have such opportunity.

4

federal employees."); 5 U.S.C. § 551(1) (defining the "agency" to which the act applies to include "each authority of the Government of the United States . . . ."). The Tucker act, 28 U.S.C. § 1491, does not itself provide a substantive right, but is "simply [a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law," *United States v. Bormes*, 568 U.S. 6, 10 (2012) (quoting *United States v. Navajo Nation*, 556 U.S. 287 (2009)). And 18 U.S.C. §§ 242, 1011, and 1028 are criminal statutes, which do not provide a private right to action. Finally, 19 U.S.C. § 1592 deals with tariffs, and 8 U.S.C. § 1324c prohibits the production or use of counterfeit documents in immigration proceedings. None of these is relevant here.

Accordingly, the court finds that the strongest claim asserted is pursuant to § 1983, and the court construes it accordingly. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006)). Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

However, here, even a § 1983 claim must be dismissed summarily, since the Department is not a "person" within the meaning of the statute, and it enjoys immunity from suit under the Eleventh Amendment. *Bhatia v. Connecticut Dep't of Child. & Fams. (DCF)*, 317 F. App'x 51, 52 (2d Cir. 2009) ("[A] state agency[] is not susceptible to liability under section 1983, both because such an agency is not a 'person' within the meaning of that statute, and because state agencies are entitled to Eleventh Amendment immunity.") (citing *Will v. Mich. Dep't of Police*, 491 U.S. 58, 70–71 (1989) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

There is a narrow exception to Eleventh Amendment immunity, but the court finds this exception inapplicable here. "The doctrine of *Ex Parte Young* is a limited exception to the general principle of sovereign immunity and allows 'a suit [for injunctive relief] challenging the constitutionality of a state official's actions in enforcing state law' under the theory that such a suit is not 'one against the State,' and therefore not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. 123, 154 (1908)) (alteration in original). First, it is unclear that Plaintiff's challenge is to the constitutionality of state law, but the court will accept for present purposes that such a challenge could be construed from the complaint. And the court acknowledges that Plaintiff has prayed for injunctive relief, specifically for an order instructing DCF to develop policies that prevent any improper execution of its responsibilities as to other parents in the future.

But Plaintiff does not have standing to bring a claim for equitable relief for a hypothetical future injury. *See Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages,

they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."). Nor does he have standing to bring a claim on behalf of hypothetical injured parties. *Kowalski v. Tesmer*, 543 U.S. 125, 131–32 (2004) (finding attorneys lacked standing to bring a claim on behalf of hypothetical future clients). Accordingly, Plaintiff cannot state a cognizable claim for injunctive relief under the *Ex Parte Young* doctrine, even assuming it is applicable.

In summary, Plaintiff cannot state his § 1983 claim against the Department because it is immune from suit for damages. Furthermore, Plaintiff lacks standing to bring a § 1983 claim for injunctive relief against the Department. However, dismissal for these reasons would demand an opportunity to amend the complaint, as the error of naming only the state agency as a defendant easily could be corrected and resurrect the dismissed claims. So, in the interest of judicial efficiency, the court will continue its analysis. Plaintiff's claim for injunctive relief also would be barred as to an individual defendant for lack of standing. Thus, if Plaintiff could state any § 1983 claim on the facts alleged, it could only be a claim for damages against individual Department officials.

There are several substantive hurdles such a claim would have to clear before convincing the court that it would be cognizable. First, it is unclear that the relevant federal statutes and regulations create any private right to action. A federal "regulation may be privately enforced if it 'invoke[s] a private right of action that Congress through statutory text created.'" *Taylor ex rel. Wazyluk v. Hous. Auth. of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011) (quoting *Alexander v. Sandoval*, 532 U.S. 275 (2001)) (alteration in original). Thus, in determining whether Plaintiff can bring suit to enforce 45 C.F.R. § 303.5, the court must determine whether he can bring suit to enforce 42 U.S.C.

§ 666(a)(5)(C)(i).  That question, in turn, is legally novel, but the relevant legal standard which would apply to the question sets a high bar "that will be cleared only in the 'atypical case.'"  *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, (2025) (quoting *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023)).  And the court notes that other courts have found that other, related IV-D provisions do not provide any private right to action.  *See, e.g., Lions v. New York State Off. of Child Support Enf't*, No. 1:24-CV-7181-GHW, 2025 WL 81421, at *8 (S.D.N.Y. Jan. 10, 2025) ("Finally, to the extent that Plaintiff seeks to enforce Title IV-D's requirement that New York State operate its child support program in "substantial compliance" with Title IV-D, he may not because the statute does not give rise to a private right of action.").  While not dispositive of whether the specific provision at issue here provides a private right of action, such cases are persuasive authority that it does not.

Separately, the court might construe the complaint to present the argument that Plaintiff has a liberty interest in the proper establishment of his paternity, which demands certain procedural safeguards.  But constitutional procedural safeguards are distinct from statutory safeguards, and violation of the latter does not show violation of the former.  *See United States v. Amanuel*, 615 F.3d 117, 125 (2d Cir. 2010) (noting that "the sealing requirement under § 2518(8)(a) is not a constitutional exclusionary device but is, rather, a statutory safeguard . . . .").  And as to constitutional safeguards, his entitlement to process is dependent upon whether the alleged conduct was unauthorized or mandated by state-prescribed procedures.  *Vaccarella v. New York State*, No. 00-CV-6262 (CBA), 2004 WL 7338991, at *7 (E.D.N.Y. Mar. 9, 2004) ("The Supreme Court has recognized two categories of procedural due process violations: '(a) claims based on established

state procedures and (b) claims based on random, unauthorized acts by state employees.'") (quoting *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  If the former, there is no § 1983 claim "so long as the State provides a meaningful postdeprivation remedy," *Hellenic*, 101 F.3d at 880, and it appears that under state law, there is a process by which Plaintiff could challenge his voluntary acknowledgment of paternity, Conn. Gen. Stat. § 46b-458 ("[A] proceeding to adjudicate parentage may be maintained by . . . a person who is a parent of the child" within the meaning of Connecticut Parentage Act, which appears to include those who voluntarily acknowledge paternity).  And if the former, it is not clear that the acknowledgment of paternity itself would qualify as a "deprivation" that would entitle Plaintiff to any specific pre-acknowledgment process.  Relevant authority indicates that one may be entitled to process only before any sanctions are imposed.  *See, e.g., Weinstein v. Albright*, 261 F.3d 127, 135 (2d Cir. 2001) (finding notice and an opportunity to be heard to satisfy due process requirements before the denial of a passport); *Collins v. Saratoga Cnty. Support Collection Unit*, 528 F. App'x 15, 16 (2d Cir. 2013) (finding pre- and post-deprivation administrative process sufficient to satisfy due process considerations before suspending someone's driver's license).

In other circumstances, it might be appropriate to allow this action to proceed for further development of Plaintiff's claim and additional investigation into the legal questions it presents.  But after thorough review of all possible avenues to a cognizable claim in the circumstances as they are, the court concludes that even if Plaintiff were to have a cognizable claim, the court still would abstain from exercising its jurisdiction over that claim under the domestic relations abstention doctrine.  This doctrine recognizes that

"even if subject matter jurisdiction lies over a particular [domestic] action, federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in [the] field." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 620 (2d Cir. 2019) (affirming a district court's abstention from hearing a § 1983 action arising from a child custody dispute where the plaintiff's claims were, or were "on the verge of being, about child custody" and the plaintiff had alleged no facts showing there was any obstacle to a fair determination of the issue in state court).

Plaintiff's claim, while not directly seeking to undo the state court's child support order, clearly is "on the verge" of being about child custodial matters. Despite close reading of the complaint and thorough research on related legal questions, the court can conceive of no way it could adjudicate the issue of Plaintiff's federal rights independently of the family issues that flow therefrom. The court therefore must abstain from hearing Plaintiff's claim. *See Edem v. Spitzer*, 204 F. App'x 95, 97 (2d Cir. 2006) ("[W]e summarize the state [paternity] proceedings only to illustrate that Edem's procedural due process claims are, in fact, inextricably intertwined with the state court's judgment, and thus, outside our subject matter jurisdiction.").

Finally, the court declines to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, for the declaratory relief Plaintiff seeks. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, (1952) (stating that the DJA is an "enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the [DJA] has

been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

Given the conclusions herein, the court finds any attempt to amend the complaint would be futile, and so leave to amend is denied.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Motion to Dismiss, ECF No. 26, is **GRANTED;**
2. This action is **DISMISSED with prejudice;** and
3. The court respectfully asks the Clerk of Court to please **CLOSE** this case.

**IT IS SO ORDERED** in Hartford, Connecticut, this 10th day of December, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE